[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 549 
This matter has been in active litigation since 1942. On a number of occasions both the trial and appellate courts have had it under consideration and all phases of it have been thoroughly aired. The cause is now before me upon a petition for review based on newly discovered evidence and fraud.
The evidence offered as newly discovered is a check of the Valco Mortgage Company dated October 11, 1938, drawn to the order of Rachel Barnet and endorsed by Rachel Barnet and Gaetano Belfatto, her attorney. Also offered is a copy of the 1938 income tax return of the Broad Street Corporation, filed in October, 1940, and signed by Vincent Belfatto. This return had attached to it a rider which brought into question the validity of the mortgage around which this litigation revolves. And, lastly, there was submitted for consideration an unfiled bill of complaint drawn by Gaetano Belfatto and discussed by him with his attorney in January, 1939. In this bill of complaint the validity of the mortgage was attacked.
It has long been settled that after the time for appeal has expired, a judgment may not be reopened except for the admission of newly discovered evidence or because of the existence of some special equity that would give the court the discretionary power to make the order. Watkinson v. Watkinson, 68 N.J. Eq. 632. Before the newly discovered evidence may be considered, there must be a showing that by the exercise of all due diligence the evidence could not have been made available at the trial. The evidence must be more *Page 550 
than merely cumulative. And if its sole purpose is to discredit the testimony of an adversary it will not be sufficient to sustain the petition. In re Roberson, 95 N.J. Eq. 672. The evidence must be of such a compelling nature as to give rise to the belief that had it been offered at the trial, a different judgment would have resulted. Traphagen v. Voorhees,45 N.J. Eq. 41. The special equities, the existence of which will justify the reopening of a judgment are errors of law upon the face of the judgment, fraud or some new matter discovered after the judgment was signed. Watkinson v. Watkinson, supra.
While examining the record for the purpose of determining whether the proffered testimony meets the required test, it is difficult to resist the temptation to substitute one's own judgment for that of the trial judge. The fact that I might have arrived at conclusions different from those he reached is not relevant. My sole duty is to determine in the light of the record and of the decisions whether the original judgment may now be reopened.
A brief review of some of the facts becomes necessary at this point. The mortgage about which this litigation is concerned, is in the amount of $150,000, and covers the building in Newark owned by the plaintiff, Broad Street Corporation. It was held originally by one Tillie O. Barnet, who sold it to the defendant, Valco Mortgage Co., a corporation controlled by the defendant, Warren, for the sum of $55,000. The validity of the transfer to Valco Mortgage Co. was challenged on the ground that Mr. Warren, as counsel for Broad Street Corporation, had taken an improper advantage of his client. After extended hearings, the Vice-Chancellor who heard the case determined that "the defendant, Warren, obtained the Tillie O. Barnet mortgage by the improper use of confidential information and in violation of a duty which he owed to the Broad Street Corporation as its attorney." 536 Broad Street Corp. v. Valco Mortgage Co., etal., 135 N.J. Eq. 361.
In substance, the defense was that Broad Street Corporation knew of the purchase of the mortgage at a discount by *Page 551 
Valco Mortgage Co.; acquiesced in the purchase and agreed to pay the mortgage in full as consideration for an agreement by Mr. Warren to render legal services for Broad Street Corporation without further compensation. It was charged that since Warren performed legal services in pursuance of the contract, Broad Street Corporation was estopped from seeking a cancellation of the mortgage. And it was further argued that the delay in bringing the action from 1938 to 1942, during which time both Fred Barnet and Rachel Barnet had died, constituted laches on the part of Broad Street Corporation.
The Vice-Chancellor found that no contract existed between Mr. Warren and Broad Street Corporation. He found, further, that "acquiescence, such as will raise an estoppel, presupposes full knowledge, or in the alternative, circumstances which may fairly be said to put one on notice. The proofs here fail to establish that Broad had notice, actual or constructive." And he concluded that Broad Street Corporation was not guilty of laches.
Gaetano Belfatto and Vincent Belfatto, his son, both lawyers and relatives of Rachel Barnet, became connected with the affairs of Broad Street Corporation in 1938, originally as attorneys for Fred and Rachel Barnet. In 1939, Vincent Belfatto was elected president of the plaintiff corporation. During the course of the trial, it became important on the issues of estoppel and laches, to determine when the Belfattos first learned of Warren's connection with Valco Mortgage Co. and of the details of the mortgage purchase. Gaetano Belfatto did not testify. Whether he was dead at the time of the trial or died later, does not appear. Vincent Belfatto took the stand and was rather vague as to when he first learned of Warren's association with Valco Mortgage Co. Vincent Belfatto's recollection was that it was in 1939. During cross-examination Belfatto was shown letters from Warren to Fred Barnet of which Belfatto had obtained possession in 1938. Belfatto admitted that he may have read the letters when he received them but did not recall having done so. Had he read the letters, Belfatto must have learned of Warren's connection *Page 552 
with Valco Mortgage Co. He insisted, however, that he did not learn then the facts of the mortgage transaction. Mr. Warren testified that in 1938 he made a complete disclosure to the Belfattos of the circumstances surrounding the purchase of the mortgage; that thereafter they caused his re-election to the board of directors of Broad Street Corporation and, without protest, permitted him to render services to the plaintiff. Mr. Collins, who had served at that time as attorney for Mrs. Barnet and the Belfattos corroborated the Warren testimony concerning the disclosure of the details of the mortgage purchase. Belfatto denied the testimony. The Vice-Chancellor concluded that "There was no estoppel after the Belfattos appeared, as I am satisfied from the evidence that they had not sufficient information relative to Warren's conduct with respect to his acquisition of the mortgage which would put them on notice."
According to the petition for review, The Valco Mortgage Co. check of October 11, 1938, offered as newly discovered evidence, represented the proceeds of the sale of some building and loan stock owned by Broad Street Corporation and sold by Warren at the request of Mrs. Barnet and Gaetano Belfatto. The reason for the sale was that money was needed to provide funds with which to pay back salary owed to Fred Barnet, who was the president of Broad Street Corporation. This check, according to Mr. Warren's affidavit, was given to Vincent Belfatto on October 11, 1938, for delivery to Mrs. Barnet. At the original hearing there was testimony concerning the sale of the building and loan stock. The check was not produced at that time. In the petition for review, defendants state that the check was not discovered by Warren until 1947, and that he did not recall the purpose for which it was drawn until 1948. I accept as true the statements concerning the discovery and production of the check. It is inconceivable that Mr. Warren would have withheld the check had he remembered that it existed. The conclusion follows that this evidence could not have been made available at the trial by the exercise of due diligence. *Page 553 
Defendants argue that the Valco Mortgage Co. check of October 11, 1938, is conclusive proof that as of that date, Vincent Belfatto knew that Warren was identified with Valco Mortgage Co. and that he must have known the circumstances surrounding the purchase of the mortgage. They urge that the check stamps Belfatto as a perjurer and that by giving false testimony he perpetrated a fraud upon the court which resulted in an improper judgment. The claim is further made that the production of the check at the hearing would have caused the Vice-Chancellor to reject the testimony of Belfatto in its entirety and give judgment in favor of the defendants.
I am unable to give to the check the weight attributed to it. At best, it tends to establish the fact that as of October 11, 1938, Mrs. Barnet and Gaetano Belfatto were aware of Mr. Warren's connection with Valco Mortgage Co. It does not throw any light on the important question as to what knowledge they had of the mortgage transaction. It was their knowledge of Mr. Warren's association with Valco Mortgage Co. coupled with knowledge of the details of the mortgage purchase which, if established, could have raised an estoppel.
As far as the testimony of Vincent Belfatto is concerned, the effect of the production of the check would be slight. In his answering affidavit, Belfatto swore that he could not recall the check. The statement is reasonable, especially in view of the fact that a year passed before Mr. Warren could recall its purpose. And assuming that Belfatto examined the check, of which there was no proof, the examination could only result in his learning on October 11, 1938, that Mr. Warren was an officer of Valco Mortgage Co. It may be that the check to some degree affects Belfatto's credibility. Its production, however, does not justify the conclusion that all of Belfatto's testimony was unbelievable or that he was guilty of suppressing evidence. Nor can I agree that the introduction of the check at the hearing would have resulted in a different judgment. There was evidence before the court, in the shape of Barnet's letters, from which the Vice-Chancellor could have concluded that Warren's connection *Page 554 
with Valco Mortgage Co. was known in 1938. The check is only cumulative evidence on that point.
It seems to me that the probative effect of the income tax return and the unused bill of complaint cannot be considered at this time. The income tax return was in the hands of the defendants while the trial was in progress. The bill of complaint was discussed at the trial. A question to Mr. Collins during his examination as a witness would have established the fact that the copy of the bill of complaint was in existence. Under the circumstances, I must conclude that due diligence was not used to make either the income tax return or the bill of complaint available at the trial. Hence they cannot be said to be newly discovered evidence.
And, finally, it is urged that the Vice-Chancellor misinterpreted the case of Keasbey v. Wilkinson, 51 N.J. Eq. 29, to which he referred in his opinion as follows:
"Defendant relies on the cases of Keasbey v. Wilkinson,51 N.J. Eq. 29, and Solimine v. Hollander, 128 N.J. Eq. 228,276. In the Keasbey case there was an oral contract between Keasbey and a bank whereby Keasbey was to be released of his obligation on a bond for legal services to be rendered by him to the bank without compensation. The said contract was admitted by both parties and the Court held the receiver of the insolvent bank was estopped from enforcing the obligation against Keasbey."
The defendant, according to the petition, examined the docket in the Keasbey case and discovered that the answer of the defendant therein denied the existence of the contract with Keasbey. Conceding the truth of the allegation in the petition, the place to have made known the error was the appellate court, not here.
From all of which it follows that, in my opinion the petition for review must be denied. *Page 555